UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAIR HOUSING CENTER OF
METROPOLITAN DETROIT,
And DAR'SHA L. HARDY,

        Plaintiffs,

vs.

Case No. 16-CV-12140

HON. GEORGE CARAM STEEH

IRON STREET PROPERTIES, LLC.,
d/b/a RIVER PARK LOFTS,
BOYDELL DEVELOPMENT, INC.,
and DENNIS KEFALLINOS,

        Defendants.
_____/

## OPINION AND ORDER REGARDING DISTRIBUTION OF ATTORNEY FEES

This matter came before the court for an evidentiary hearing to determine the distribution of attorney fees among two attorneys who represented plaintiff Fair Housing Center of Metropolitan Detroit ("FHCMD"). The issue arises due to a dispute between attorneys Stephen Thomas and Chui Karega as to attorney fees of $99,632.49, generated from the $300,000 settlement of the underlying case on November 13, 2018 in favor of FHCMD.

## FACTUAL BACKGROUND

Attorney Stephen Thomas was retained by plaintiff Dar'Sha Hardy on July 24, 2015, to represent her in a Fair Housing Case involving an alleged familial status violation. Thomas attended the "tester" interviews with the Michigan Department of Civil Rights, and then filed a housing discrimination action on behalf of Hardy on February 22, 2016. The complaint alleged that Hardy had been discriminated against when she was denied an apartment because she had children under 18 years of age, in violation of the Fair Housing Act of 1988. The complaint also asserted a race discrimination claim.

FHCMD requested that Thomas represent it in its own action against the same defendants. On March 29, 2016, Thomas entered a written contingency fee retainer agreement with FHCMD. Thomas filed a complaint on behalf of FHCMD on June 10, 2016. The two cases proceeded independently and were eventually consolidated on April 19, 2017.

Thomas participated in three Rule 26(f) conferences, served initial disclosures, filed witness lists, served interrogatories, requests for admission and requests for production of documents. When proper

responses were not filed, Thomas filed a motion to compel.  Defendants moved to dismiss Hardy's racial discrimination claim, which plaintiff stipulated to based on a lack of evidence.  The familial status claim remained.

Thomas took the depositions of defendant Dennis Kefallinos and leasing manager Liz Telegadas, who both denied that defendants had any policy against leasing to families with children.  Thomas met with the Department of Justice ("DOJ") and they decided to assist in the FHCMD case.  The DOJ participated in the investigation and discovered a recorded telephone message and admission against interest by Liz Telegadas.  Thomas interviewed and took the depositions of plaintiff Hardy; FHCMD Executive Director Margaret Brown; FHCMD Coordinator of Systemic Investigations and Testing, Engela Bertolini; four of the testers; and two independent witnesses.  Motions for summary judgment were filed by both sides, with briefing for plaintiffs undertaken by Thomas.

On September 26, 2017, Ms. Brown requested that Thomas call her.  Brown informed Thomas that she did not think the case would settle.  Thomas agreed and, given the admission against interest of Liz Teledadas, he said he believed he would obtain a good result at trial.  Then Brown

allegedly told Thomas, "I do not think that you have the experience and background to try the case. I am basing this on the way you handled my deposition last week." Brown allegedly indicated she was contacting attorney Chui Karega to take over the case. Brown allegedly told Thomas that FHCMD "will pay you for the work you have done" and that Karega would contact Thomas to enter into a substitution of attorney.

Thomas believed he was being discharged. Thomas denies that Brown requested that he stay on as "second chair" or in any other capacity. The first time this suggestion was made in writing was in Karega's Statement Regarding Attorney Fees on December 14, 2018. ECF No. 67, PageID 1175, 1176, 1182. Thomas waited 24 hours, but Karega did not contact him or provide him with the substitution paperwork. On September 27, 2017 Thomas filed his motion to withdraw as counsel for FHCMD due to "a breakdown in the attorney client relationship." ECF No. 46. Thomas also filed a Charging Lien. ECF No. 47. A stipulated order of attorney substitution was entered by the court on November 1, 2017. Discovery ended on November 2, 2017.

On January 24, 2018, Thomas argued the motion for summary judgment on behalf of both plaintiffs. Thomas did so even though Karega

now represented FHMCD and was present at the hearing.  Judge O'Meara issued an opinion denying the motion on March 19, 2018.

The matter was referred for settlement conference before Magistrate Judge Grand on February 16, 2018.  Thomas settled Ms. Hardy's claim at the conference.  Karega did not settle FHCMD's claim.  The FHCMD case was eventually referred for a settlement conference before Magistrate Judge Majzoub on October 22, 2018.  A settlement was entered on the record on November 13, 2019.  The case settled for $300,000 and a Consent Order was filed on January 10, 2019.  ECF No. 71.

The matter is before the court on the attorney fee dispute between attorneys Thomas and Karega.  Of the settlement amount, $99,632.49 was set aside as attorney fees and was deposited in the court's registry in an interest-bearing account.  ECF No. 79.  Thomas and Karega appeared before the court for an evidentiary hearing on September 26, 2019.

Thomas argues that he is entitled to a fee based on quantum meruit because he was not discharged for cause and in fact he had a reasonable basis for withdrawing.  Thomas' retainer agreement provides:

> 8. DISCHARGE AND WITHDRAWAL. <u>FHCMD may discharge</u> STEPHEN A. THOMAS, PLC, at any time, upon written notice to STEPHEN A. THOMAS, PLC. Such a discharge does not, however, relieve FHCMD of the obligation to pay any and all

costs, disbursements, and litigation expenses Incurred prior to such termination, and STEPHEN A. THOMAS, PLC, has the right to recover from FHCMD the reasonable value of STEPHEN A. THOMAS: PLC,' legal services in accordance with the terms of their Agreement from the effective date of this Agreement to the date of discharge. <u>STEPHEN A. THOMAS, PLC, may withdraw</u> from representation of FHCMD if, among other things, FHCMD does not honor the terms of the Agreement, fails to cooperate with STEPHEN A. THOMAS, PLC, or upon the occurrence of any fact, circumstance or reason that provides a reasonable basis for withdrawal.

(underlining added).

Mr. Karega argues that Thomas quit as counsel without cause when he was advised the legal team of FHCMD would be expanded and therefore forfeited his right to an attorney fee. According to Karega, even if FHCMD had discharged Thomas, it would have been with cause. This is because Thomas engaged in multiple acts without the authorization of his client. The only act identified by Karega is that Thomas asserted a race discrimination claim without authorization and did not dismiss it when he was directed to do so by Ms. Brown. The claim was voluntarily dismissed by Thomas after a motion to dismiss was filed because he agreed there was a lack of evidence. Karega argues that by bringing the claim Thomas exposed FHCMD to Rule 11 sanctions and this exposure gave FHCMD cause to discharge Thomas if it had chosen to do so.

## ANALYSIS

I. <u>Contingency Fee Agreements</u>

Michigan Court Rule 8.121(F) provides that "[c]ontingent fee arrangements made by an attorney with a client must be in writing and a copy provided to the client." Michigan Rule of Professional Conduct (MRPC) 1.5(c) also requires that "[a] contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined."

The Michigan Court of Appeals held that the trial court abused its discretion in enforcing a charging lien based on an alleged contingency fee contract since both MCR 8.121(F) and MRPC 1.5(c) require such contracts be in writing. *Toma v. St. Peter Medical Center*, Case No. 330585, 2017 WL 1418082 (Mich. App., April 20, 2017) (unpublished). The court further held that the attorney would not be entitled to his claimed fees under a *quantum meruit* theory because "a party who comes into equity must come with clean hands." *Id.* at * 5 (citation omitted).

Karega acknowledged on the record that he did not enter a written contingency fee agreement when he was retained by FHCMD. In support of his fee agreement, Karega submits the affidavit of Ms. Brown, which states:

> When I retained Attorney Karega, it was on a contingent fee basis. Attorney Karega was to receive a fee of 33 1/3 of the net settlement recovery. With so many years of working with the Fair Housing Center, the fee agreement with attorney did not have to be, and was not reduced to writing.

ECF No. 67, Ex. A, para. 6. The fact that the client orally agreed to the terms of a contingency fee contract does not supersede the law requiring that all contingency fee agreements be in writing. Taking this position in an equitable proceeding arguably gives Karega unclean hands such that he is not entitled to an award on a *quantum meruit* basis. *See id*.; *Gillis v., Wells Fargo Bank, N.A.*, Case No. 12-10734, 2014 U.S. Dist. LEXIS 145499, * 3 (E.D. Mich. Oct. 13, 2014).

Almost two years after Karega first appeared in this case, on August 12, 2019, he and FHCMD entered a contact for legal representation, purporting to obligate FHCMD to pay a one-third attorney fee from the settlement funds at issue. In the agreement, FHCMD purports to retain Karega for future legal services to be provided concerning the implementation and enforcement of the Consent Order that was entered on January 10, 2019. In return for such future work, the FHCMD agrees to pay Karega 33 13% of the past recovery, less any amount awarded to prior counsel Thomas.

Under this new contingent fee agreement, the legal services to be rendered entail negligible risk and no "outcome" for the fee to be contingent upon. This is because the outcome and the contingency have already occurred. The fund to pay attorney fees was created upon the settlement of the case, which occurred almost a year ago. The August 12, 2019 contingent fee agreement is clearly an attempt by Karega to remedy the fact that he did not have a written agreement with FHCMD as required. Overall, the court is taken by the sloppiness of Karega's legal engagement, but stops short of finding bad faith.

Mr. Thomas, on the other hand, did have a written fee agreement with FHCMD. If "an attorney's employment is prematurely terminated before completing services contracted for under a contingency fee agreement, the attorney is entitled to compensation for the reasonable value of his services on the basis of quantum meruit, and not on the basis of the contract, provided that his discharge was wrongful or his withdrawal was for good cause." *Cristini v. City of Warren*, 30 F.Supp.3d 665, 669-70 (E.D. Mich. 2014) (citations omitted). This is "because a client has an absolute right to discharge an attorney and is therefore not liable under the contract for exercising that right." *Reynolds v. Polen*, 222 Mich.App. 20, 25

(1997). However, "quantum meruit recovery of attorney fees is barred when an attorney engages in misconduct that results in representation that falls below the standard required of an attorney (e.g., disciplinable misconduct under the Michigan Rules of Professional Conduct) or when such recovery would otherwise be contrary to public policy." *Id.* at 26.

The court finds there is no credible evidence of misconduct by Mr. Thomas in this case. Furthermore, the court finds that Thomas was reasonable in withdrawing from representation where the facts support his conclusion that his client had lost confidence in him. Therefore, Mr. Thomas is entitled to recover his reasonable attorney fee under a quantum meruit theory of recovery.

Courts apply the lodestar approach by determining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. The fee is then adjusted by considering a number of factors such as attorney experience, skill and time involved, results achieved and difficulty of the case. *Id.*

II. Fee Calculation

Applying the lodestar method, Thomas's time records through January 24, 2018, when he argued the summary judgment motions on

behalf of both defendants, show he worked 304.30 hours at his standard hourly rate of $325, for a total of $98,897.50.  Thomas argues it is appropriate to include his work on the Hardy matter because it was beneficial and supportive of both cases, and not duplicative.  In support, Thomas refers to Judge O'Meara's order consolidating the two cases because they involve nearly identical law and facts.  ECF No. 23.[1]  The court agrees that legal work done on each case would provide a benefit to the other case while Mr. Thomas was representing both plaintiffs.  It is also true that work done on Ms. Hardy's case prior to representing FHCMD provided a benefit to both clients.   However, once Mr. Thomas withdrew as counsel for FHCMD and Mr. Karega took over the representation, Mr. Thomas had no further expectation of recovering for legal work going forward.

The court next turns to the factors appropriately considered in determining whether an attorney's fee is reasonable.  These may include (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6)

---

[1] This case was originally assigned to Hon. John Corbett O'Meara and was reassigned to this court on July 3, 2018.

the nature and length of the professional relationship with the client.  In addition, the court may consider the degree of risk undertaken by an attorney who was prematurely discharged.  *Reynolds*, 222 Mich. App. at 29 (citation omitted).

     Mr. Thomas has practiced law in Michigan for 28 years, primarily in consumer bankruptcy and consumer rights litigation.  He has attended several fair housing seminars and training sessions, including one at the direction of Ms. Brown while he was representing FHCMD.  Thomas's involvement in this case included over two years of investigation and litigation.  He conducted extensive discovery and filed pleadings on several motions, including dispositive motions.  Thomas provided detailed time records, made contemporaneously with the work he did on the case.  The eventual settlement of $300,000 was a good result for FHCMD.  While Mr. Karega participated in the conference that resulted in the settlement, Mr. Thomas was primarily responsible for building the case on behalf of FHCMD.  The court also acknowledges that Mr. Thomas undertook a high degree of risk in representing two clients for a lengthy period under contingency fee agreements.

In contrast to Mr. Thomas, Karega admitted that his involvement in the case was principally limited to attending two settlement conferences over three separate days. (Responses to Requests for Admissions, ECF No. 86-4) Karega did not submit any time records when requested by the court, but did offer an "Estimated Activities Log" as an exhibit at the evidentiary hearing. (Hearing Ex. 2)

The court finds that Mr. Thomas did the bulk of the legal work on behalf of FHCMD. The fees he seeks are reasonable in view of his experience, time and effort spent on the case and degree of risk undertaken in handling the case on a contingency fee basis. While Mr. Karega did expend some time and effort on behalf of FHCMD, his work consisted mostly of participating in settlement conferences. In addition, he neglected to procure a written fee agreement as required and failed to keep contemporaneous time records. Under the circumstances presented, the court determines the following distribution of attorney fees:

Mr. Thomas shall receive $89,669.24 from the principal deposited with the court, plus 90% of accumulated interest. Mr. Thomas' address is 645 Griswold Street, Suite 1630, Detroit, Michigan 48226.

Mr. Karega shall receive $9,963.25 from the principal deposited with the court, plus 10% of accumulated interest. Mr. Karega's address is 19771 James Couzens Highway, Detroit, Michigan 48235-1937.

IT IS HEREBY ORDERED that Mr. Thomas and Mr. Karega shall provide their employer identification numbers via email to Financial@mied.uscourts.gov so they can receive payment in accordance with this opinion and order.

IT IS HEREBY FURTHER ORDERED that the Clerk shall distribute the moneys held in the court's registry in accordance with this opinion and order.

Dated: November 5, 2019

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 5, 2019, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk